1
2
3
4
5
6                        **UNITED STATES DISTRICT COURT**
7                              **DISTRICT OF NEVADA**

8   MARK HARRISON PERKINS,                )
                                          )
9              Plaintiff,                 )         Case No. 2:12-cv-01242-GMN-VCF
                                          )
10  vs.                                   )
                                          )         **ORDER**
11  ANTHONY DEMEYEO, *et al.*,            )
                                          )
12  _____Defendants._____ )

13          Plaintiff, who is a detainee at the Nye County Detention Center  has submitted a Civil

14  Rights Complaint Pursuant to 42 U.S.C. § 1983 (ECF No. 1-1) and an application to proceed *in forma*

15  *pauperis*.  The Court finds that Plaintiff is unable to make an initial installment payment.  However,

16  pursuant to 28 U.S.C. § 1915, Plaintiff will be required to make monthly payments toward the full filing

17  fee of one hundred fifty dollars ($350.00) when he has funds available.

18          The complaint is subject to the provisions of the Prisoner Litigation Reform Act as

19  discussed below.

20  **I.       Screening Pursuant to 28 U.S.C. § 1915A**

21          Federal courts must conduct a preliminary screening in any case in which a prisoner

22  seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

23  § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are

24  frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from

25  a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),(2).  *Pro se* pleadings,

26  however, must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir.

1988).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff.  *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is

1   insufficient.  *Id., see Papasan v. Allain*, 478 U.S. 265, 286 (1986).

2        A reviewing court should "begin by identifying pleadings [allegations] that, because they

3   are no more than mere conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556

4   U.S. 662, 678-79, 129 S.Ct. 1937, 1950 (2009).  "While legal conclusions can provide the framework

5   of a complaint, they must be supported with factual allegations."  *Id.*  "When there are well-pleaded

6   factual allegations, a court should assume their veracity and then determine whether they plausibly give

7   rise to an entitlement to relief.  *Id.*  "Determining whether a complaint states a plausible claim for relief

8   [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

9   common sense."  *Id*.

10        Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua*

11  *sponte* if the prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based

12  on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or

13  claims of infringement of a legal interest which clearly does not exist), as well as claims based on

14  fanciful factual allegations (e.g., fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S.

15  319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

16  **II.     Discussion**

17        Plaintiff, a pre-trial detainee at the Nye County Detention Center (also referred to as the

18  "jail") in Tonopah, Nevada.  He contends that his rights to due process, freedom of speech and to access

19  the courts have been violated by defendants Anthony Demeyeo, the Nye County Sheriff, along with Lt.

20  Dolphin and Sgt. Geathridge, as the officials who set and enforce the mail policies at the jail.

21        Plaintiff alleges that he has been denied the right to send and receive mail in any form

22  except post cards and that as an unrepresented criminal defendant, he is being denied the ability to

23  communicate effectively with persons outside the jail who can help him collect evidence or current case

24  law.  He complains that the general handling of the mail violates due process because mail is lost,

25  destroyed, delayed and completely unaccounted for in the jail.  He contends that there is no set policy

26

1   for handling mail and that each deputy jailer has discretion to determine what is or is not proper mail.

2   Finally, plaintiff complains that there is no grievance process or other recourse to effectively complain

3   about issues related to denied, lost or missing mail, including a paycheck that was purportedly mailed

4   to him, but never received or returned.

5       A.      First and Fourteenth Amendment Mail - Counts One and Three

6           Counts one and three complain about the general mail policies in the jail and the

7   haphazard way that mail is handled, resulting in lost and delayed mail, including in plaintiff's case, the

8   loss of a payroll check sent by plaintiff's mother to the jail to be credited to plaintiff's account.  Plaintiff

9   alleges that the policy that inmates may only use post cards to send out correspondence is unreasonable

10  in that it denies him the ability to freely express himself by limiting the number of words he can write.

11  Plaintiff alleges that when he sent a grievance to inquire about the check, he was told the problem must

12  lie with the post office.  Plaintiff contends that the amount of lost of delayed mail, including the

13  paycheck and several post cards from friends, raises serious concerns about the jail's ability and

14  willingness to take responsibility for handle mail properly.  He further complains that the mail policies

15  are arbitrary and left to the discretion of the jailer on duty at the time.

16          Pretrial civil detainees such as plaintiff "retain at least those constitutional rights ...

17  enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Thus, plaintiff has at least

18  those First Amendment rights to freedom of expression as are enjoyed by prisoners convicted of crimes.

19  In the context of mail restrictions, when regulation impinges on a prisoner's constitutional rights, "the

20  regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482

21  U.S. 78, 89 (1987).

22          First, "there must be a 'valid, rational connection' " between the prison's action and "the

23  legitimate governmental interest put forward to justify it.' " *Id.* (citation omitted). Under this factor, the

24  action "cannot be sustained where the logical connection" between it and "the asserted goal is so remote

25  as to render the policy arbitrary or irrational." *Id*. at 89-90. The governmental objective or interest also

26

4

1    "must be a legitimate and neutral one." *Id*. at 90. That is, the particular action at issue must operate "in

2    a neutral fashion, without regard to the content of the expression." *Id*.

3             The second factor "is whether there are alternate means of exercising the right that remain

4    open to prison inmates." *Id*. Thus, "[w]here 'other avenues' remain available for the exercise of the

5    asserted right, ... courts should be particularly conscious of the 'measure of judicial deference owed to

6    corrections officials ... in gauging the validity" of the action. *Id*. (citations omitted). The third factor "is

7    the impact accommodation of the asserted constitutional right will have on guards and other inmates,

8    and on the allocation of prison resources generally." *Id*. In other words, "[w]hen accommodation of an

9    asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should

10   be particularly deferential to the informed discretion of corrections officials." *Id*.

11            Lastly, "the absence of ready alternatives is evidence of the reasonableness of a prison

12   regulation." *Id*. On the other hand, "the existence of obvious easy alternatives may be evidence that the

13   regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id*. Prison officials,

14   however, need not "set up and then shoot down every conceivable alternative method of accommodating

15   the claimant's constitutional complaint" to satisfy this factor. *Id*. at 90-91. In other words, it "is not a

16   'least restrictive alternative' test." *Id*. Nevertheless, if a prisoner "can point to an alternative that fully

17   accommodates" his or her "rights at *de minimis* cost to valid penological interests, a court may consider

18   that as evidence" that the governmental action "does not satisfy the reasonable relationship standard."

19   *Id*. at 91.

20            Plaintiff has stated a colorable claim for a violation of his First Amendment rights to

21   freedom of expression.  A mail policy that is so arbitrary and yet has important aspects, such as

22   determining what constitutes legal mail, left to the discretion of the jailer on duty at the time cannot

23   clearly be said to support the necessary penological interests of the security of the jail.  Counts one and

24   three may proceed against the defendants.

25

26

5

1    B.    First Amendment and Access to Courts - Count Two

2    "Prisoners have a constitutional right of access to the courts ... grounded in the Due

3    Process and Equal Protection Clauses." *Cornett v. Donovan*, 51 F.3d 894, 897 (9th Cir.1995) (citing

4    *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Murray v. Giarrotano*, 492 U.S. 1, 6 91989)). "To ensure

5    meaningful access," the government "has the affirmative obligation to provide inmates with 'adequate

6    law libraries or adequate assistance from persons trained in the law.' " *Id*. This right of access to the

7    courts, furthermore, is not limited to convicted prisoners. *Id*. at 897-98 (right guaranteed to people who

8    are involuntarily committed to mental institution); *see also Matzker v. Kerr*, 748 F.2d 1142, 1151 (7th

9    Cir.1984), overruled in part on other grounds *Salazar v. City of Chicago*, 940 F.2d 233, 240 (7th

10   Cir.1991) (right of access enjoyed by pretrial detainees).

11   As a pre-trial detainee, however, plaintiff's claims are reviewed under a different standard

12   than that applied to convicted inmates. *Inmates of San Diego County Jail in Cell Block 3B v. Duffy,* 528

13   F.3d 954, 956 (9th Cir. 1975). With respect to pretrial detainees, the issue for claims that are grounded

14   in the Due Process Clause is whether the particular restrictions imposed amount to punishment. *See*

15   *Valdez v. Rosenbaum*, 302 F.3d. 1039, 1045 (9th Cir.2002) ( "Pretrial detainees have a substantive due

16   process right against restrictions that amount to punishment.") (citing *United States v. Salerno*, 481 U.S.

17   739, 746 (1987); *Bell*, 441 U.S. at 535). Thus, a detainee's substantive due process rights will be found

18   to have been violated if the restrictions are "imposed for the purpose of punishment." *Id*. (quoting *Bell*,

19   441 U.S. at 535). There is no constitutional violation, however, if the restrictions "are 'but an incident

20   of some other legitimate government purpose.' " *Id*. In such circumstances, "governmental restrictions

21   are permissible." *Id*. (citing *Salerno*, 481 U.S. at 747).

22   Plaintiff alleges he is denied the opportunity to receive legal mail including legal research

23   conducted by persons outside the jail if that research has even a single word written on it from the

24   sender. He also alleges the law library at the jail does not afford access to current federal case law,

25   which requires that he obtain assistance from persons outside the jail. Finally, he avers that when he

26

6

1  filed a grievance regarding the legal mail, defendant Geathridge indicated the "mail policy is 'set by the

2  administration and will remain as is.'" Complaint, p. 5.   At this stage of the proceedings, plaintiff has

3  stated a colorable claim that he has been denied access to the courts because of the mail handling policies

4  implemented by the defendants in the jail.   Count two of the complaint may proceed.

5  **III.      Conclusion**

6             The matter may proceed on all claims against all defendants.

7             **IT IS THEREFORE ORDERED** that plaintiff's application to proceed *in forma*

8  *pauperis* (ECF No. 1) is **GRANTED.**   Plaintiff shall not be required to pay an initial installment fee.

9  Nevertheless, the full filing fee of three hundred fifty dollars ($350.00) shall still be due, even if this

10  action is dismissed, pursuant to 28 U.S.C. § 1915.

11             **IT IS FURTHER ORDERED** that the movant herein is permitted to maintain this action

12  to conclusion without the necessity of prepayment of any additional fees or costs or the giving of security

13  therefor.   This Order granting in forma pauperis status shall not extend to the issuance of subpoenas at

14  government expense.

15             **IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915, as amended by the

16  Prison Litigation Reform Act of 1995, the Nye County Detention Center shall pay to the Clerk of the

17  United States District Court, District of Nevada, 20% of the preceding month's deposits to the prisoner's

18  account  (in months that the account exceeds $10.00) until the full three hundred fifty dollar ($350.00)

19  filing fee has been paid for this action.   If Plaintiff should be transferred and become under the care of

20  the Nevada Department of Prisons, the Nye County Detention Center Accounting Supervisor is directed

21  to send a copy of this order to the attention of the Chief of Inmate Services for the Nevada Department

22  of Prisons, P.O. Box 7011, Carson City, NV 89702, indicating the amount that Plaintiff has paid toward

23  his filing fee, so that funds may continue to be deducted from Plaintiff's account.   The Clerk shall send

24  a copy of this order to the Nye County Detention Center Accounting Supervisor, P. O. Box 831,

25  Tonopah, Nevada 89049.

26

1    **IT IS FURTHER ORDERED** that the Clerk of the Court shall **FILE** the complaint,

2   issue summons to the named defendants herein, and deliver same, along with three copies of the

3   complaint, to the U.S. Marshal for service.  The Clerk shall send to plaintiff three (3) USM-285 forms,

4   one copy of the complaint and a copy of this order.  Plaintiff shall have twenty (20) days in which to

5   furnish to the U.S. Marshal the required USM-285 forms.  Within twenty (20) days after receiving from

6   the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished,

7   plaintiff must file a notice with the court identifying which defendants were served and which were not

8   served, if any.  If plaintiff wishes to have service again attempted on an unserved defendant(s), then a

9   motion must be filed with the court identifying the unserved defendant(s) and specifying a more detailed

10  name and/or address for said defendant(s), or whether some other manner of service should be

11  attempted. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished

12  within one hundred twenty (120) days from the date that the Complaint was filed.

13   **IT IS FURTHER ORDERED** that henceforth, plaintiff shall serve upon defendants, or,

14  if an appearance has been made by counsel, upon their attorney(s), a copy of every pleading, motion, or

15  other document submitted for consideration by the court.  Plaintiff shall include with the original paper

16  submitted for filing a certificate stating the date that a true and correct copy of the document was mailed

17  to the defendants or counsel for defendants.  If counsel has entered a notice of appearance, the plaintiff

18  shall direct service to the individual attorney named in the notice of appearance, at the address stated

19  therein.  The court may disregard any paper received by a district judge or a magistrate judge that has

20  not been filed with the Clerk, and any paper which fails to include a certificate showing proper service.

21   Dated this 28th day of August, 2012.

22

23

24   _____
     UNITED STATES MAGISTRATE JUDGE
25

26

8